Mark D. Brutzkus, SBN 128102
Todd M. Lander, SBN 173031
EZRA|BRUTZKUS|GUBNER LLP
21650 Oxnard Street, Suite 500
Woodland Hills, California 91367
Telephone: 818-827-9000
Facsimile: 818-827-9099
E-mail:   mbrutzkus@ebg-law.com
          tlander@ebg-law.com

Attorneys for Defendants
TARGET CORPORATION, TARGET BRAND,
HONGDOU, INC. and KANDY KISS OF CALIFORNIA, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.A. PRINTEX, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>TARGET CORPORATION; TARGET BRANDS, INC.; KANDY KISS OF CALIFORNIA INC.; HONGDOU, INC., TEX-ELLENT, INC.; SHAHRAM ZACHARY d/b/a/ PARAMOUNT TEXTILE and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO.: CV08-00075 ODW (PLAx)<br>Honorable Otis D. Wright<br>Complaint filed: January 7, 2008<br><br>**DEFENDANT KANDY KISS OF CALIFORNIA, INC., TARGET CORPORATION, TARGET BRANDS AND HONGDOU, INC'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW [L.R. 16-4]**<br><br>**Pretrial Conf:** June 29, 2009<br>**Trial Date:** July 21, 2009 |

Defendants Kandy Kiss of California, Target Corporation, Target Brands, Inc., and Hongdou, Inc. (collectively "Defendants" or "Kandy Kiss") hereby submit their Memorandum of Contentions of Fact and Law, in accordance with Local Rule 16-4.

///

///

///

///

---

# TABLE OF CONTENTS
PAGE

I. CLAIMS AND DEFENSES .................................. 1

    A. LAP's March 2005 Copyright Registration Was Void, And Therefore Only The March 2009 Registration Is At Issue .................. 1

        1. LAP Submitted An Incomplete Deposit Copy With The 2005 Registration Application ...... 1

        2. LAP Improperly Designated The Design As Published In 2005, Notwithstanding That It Was Unpublished At The Time Of The Application .. 3

    B. LAP Can't Establish Liability On Kandy Kiss' Part .................................. 3

        1. LAP Cannot Discharge Its Burden Of Proof Concerning Authorship Of The Design ........... 3

        2. LAP Committed Fraud On The Copyright Office .................................. 4

        3. LAP Can't Establish Liability Under The Prevailing Standard Governing Thin Copyrights .... 5

    C. LAP's Available Recovery, If Any, Is *De Minimus* .... 8

        1. LAP Is Not Entitled To Statutory Damages Or Attorneys Fees .............................. 8

        2. There Was No Willful Infringement by Target . 8

        3. Profits Must Be Apportioned Between the Copyrighted Work and Other Factors that Attributed to the Profits ........................ 9

        4. Defendants Are Permitted And Intend to Deduct Taxes From Their Gross Profits .......... 9

     5.    <u>Defendants Intend to Introduce Evidence of Overhead Expenses to be Deducted From Gross Profits</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

     6.  <u>Defendants Are Entitled to Deduct Overhead Expenses From The Gross Profit Even If Found to Be Willful Infringers.</u> . . . . . . . . . . . . . . . . . . . . . . . . . 10

II.   <u>CLAIMS AND DEFENSES CONCERNING HONGDOU CROSS-CLAIM</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

I. **CLAIMS AND DEFENSES**

   A. <u>LAP's March 2005 Copyright Registration Was Void, And Therefore Only The March 2009 Registration Is At Issue</u>

      1. <u>LAP Submitted An Incomplete Deposit Copy With The 2005 Registration Application</u>

As the Court is aware, plaintiff LA Printex ("LAP") ultimately sought and received two copyright registrations for the fabric design in issue here (the "Design").[1] And while the Third Amended Complaint is ambiguous at best on the subject, LAP apparently contends that both registrations are valid and at issue before the Court. This is not a mere academic exercise, since LAP's ability to recover statutory damages and attorneys survives only if the first registration is valid and subsisting.[2] For the reasons explained below, it is not.

The Copyright Act, 17 U.S.C. § 407(a)(1), mandates deposit at the Copyright Office of two complete copies of a published work to be registered. If only a fragment or portion of the work is deposited, the deposit is statutorily incomplete and the work should not register. *Nimmer on Copyright* § 7.17[E][1][a] (hereinafter "*Nimmer*"). Inasmuch as the Copyright Office normally does not examine applications, and the application appeared complete on its face, the Certificate of Registration issued.

In order for the registration to be complete, however, the deposit copy of the fabric design at issue must be *complete*; that is, the entire work to be protected as of the claimed date of the work's publication must be submitted to the Copyright

---

[1] The first registration was issued on March 21, 2005, under Registration No. VA 1-303-859, and the second on March 24, 2009, bearing Registration No. VA 1-657-880.

[2] Section 412(2) of the *Copyright Act* provides that statutory damages and attorneys fees are recoverable only where the plaintiff demonstrates that the defendants' alleged infringement occurred after the first publication date of the work in dispute and before the effective date of the work's copyright registration, unless the work is registered within three months of the initial publication date. 17 U.S.C. §412. Here, the first registration date – March 2005 – is presumably before the alleged acts of infringement. But the second date – March 2009 – is long after the conduct to which LAP objects. Thus, if the March 2009 registration is the sole instrument before the Court – as Kandy Kiss argues – LAP is prohibited from seeking or recovering either form or relief.

1
KANDY KISS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1  Office with the application for copyright registration and the appropriate fee. 15
2  U.S.C. § 407; *Nimmer* § 7.17[E][1][a] (emphasis in treatise).[3]
3      Fabric designs, in particular, are subject to specific regulation. 37 *C.F.R.*
4  *202.20* provides: "In the case of any unpublished work that is fixed, or any
5  published work that is published, only in the form of a two-dimensional
6  reproduction on sheet like materials *such as textiles and other fabrics* . . . , the
7  deposit shall consist of one copy in the form of an actual swatch or piece of such
8  material *sufficient to show all elements of the work in which copyright is claimed*
9  *and the copyright notice appearing on the work, if any. If the work consists of a*
10 *repeated pictorial or graphic design, the complete design and at least part of one*
11 *repetition must be shown.* . . . (emphasis added).
12     Additionally, 410(a) of the Copyright Act provides that a copyright shall be
13 granted and a certificate of copyright registration issued when the work sought to
14 be registered has complied with the statutory provisions for registration, i.e.
15 copyrightability and the legal and formal requirements of the copyright statute.
16 And while Section 410(c) also affords a registration certificate an assumption of
17 *prima facie* validity if made within five years after first publication of the work,
18 this section further vests the court with discretion to accord evidentiary weight to
19 the certificate of registration.
20     Kandy Kiss intends to present evidence demonstrating that LAP's March
21 2005 copyright registration did not comply with the statutory requirement of
22 Section 410. Specifically, the deposit copy submitted depicted only a portion of
23 the Design the company sought to protect, and omitted repeats of the Design, in
24 clear contravention of §202.20 of the Federal Regulations. The partial nature of
25 the deposit is not only admitted by LAP, but it is a matter of record in the case.
26 Indeed, in a June 5, 2009 Order permitting the filing of a Third Amended
27 Complaint, the Court itself found the first registration "incomplete." The
28

---

[3]  Here, the registration date on the initial application was May 15, 2005.

2
KANDY KISS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

consequences of that inchoate status are clear under the law – the registration is void *ab initio*.[4]

### 2. LAP Improperly Designated The Design As Published In 2005, Notwithstanding That It Was Unpublished At The Time Of The Application

LAP's 2009 copyright registration declares that the date of first publication of the design at issue was March 24, 2005. The effective date of the First Registration was March 21, 2005, three days before the date of first publication in the Second Registration.

In other words, LAP registered the Design in 2005 as a published work, notwithstanding that the work had yet to be published. That misstatement represents a fundamental error in the application, and vitiates the resulting registration. *See Determined Productions, Inc. v. Koster*, 1993 WL 120463 at *1 ("Wrongfully identifying a number of published individual works as an unpublished collection is a fundamental registration error, which deprives [the District Court] of jurisdiction" over an infringement claim based on the registration).[5]

The March 2005 registration is invalid on this additional basis.

### B. LAP Can't Establish Liability On Kandy Kiss' Part

#### 1. LAP Cannot Discharge Its Burden Of Proof Concerning Authorship Of The Design

The essential components of a copyright infringement claim are simple: (1) (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340,

---

[4] We acknowledge that the Court's June 5 Order also held that the jurisdictional defect flowing from the incomplete registration was cured by the later March 2009 registration of the Design. But curing the jurisdictional problems did not and could not deliver the first registration from the legal graveyard. It was and is void as a matter of law.

[5] We also note that, under 17 *U.S.C.* §§ 408 and 409, the deposit and application requirements differ for published and unpublished works. That, when coupled with the fact that registered published works maintain greater rights than their unpublished counterparts, confirms the fundamental nature of the misrepresentation on LAP's March 2005 application.

361, 111 S. Ct. 1282 (1991). Kandy Kiss intends to challenge LAP's claim of ownership of the Design.

As an initial matter, LAP contends that it authored the Design, and it certainly registered the work under its name. But Kandy Kiss expects to present evidence showing that LAP maintains no record of its purported conception or development of the Design, nor can it otherwise demonstrate the process leading to the ultimate creation. Kandy Kiss expects the testimony to reflect that LAP And we expect to produce additional evidence establishing that LAP did not create the Design itself.

### 2. **LAP Committed Fraud On The Copyright Office**

A registrant commits fraud on the Copyright Office where it knowingly fails to advise the office of facts that might lead to the rejection of the application. *See e.g., Urantia Foundation v. Maaherra,* 114 F.3d 955, 963 (9th Cir. 1997) (knowing misstatements on a registration application that may have led to the rejection of the application constitute fraud). Kandy Kiss believes the evidence will reflect fraud in this case, and on multiple, independent grounds.

First, as noted, LAP's two registration report separate publication dates for the Design. The first asserted a publication date of March 15, 2005 and an effective registration date of March 21, 2005. The second – which is not on the supplemental registration form but rather a standard VA form – provides a publication date of March 24, 2005, three days after the effective date of the initial registration. In fact, assuming the information on the second filing is accurate, the design was an unpublished work on the date of its initial registration – as a published work.[6]

Beyond that, Kandy Kiss will elicit and/or introduce evidence that LAP had not verified, and could not verify, either publication date. More particularly, LAP has no clear concept of what does or does not constitute publication, cannot

---

[6] For the reasons explained above, the misrepresentation concerning the publication date in 2005 rendered the first registration invalid under the law.

coherently explain exactly how this – or any – Design is published, and otherwise lacks any criteria for settling on alleged publication dates. In short, the company does nothing more than select dates that roughly coincide with the alleged creation date of the patterns it applies to register.

In our case, this resulted in LAP applying to register the Design as a published work, without having any means of confirming whether publication had occurred. And the company still can't show publication, on either March 15 or 24, 2005. Both registrations are invalid on that basis.

Second, Kandy Kiss expects to present evidence that LAP knowingly failed to advise the Copyright Office – in connection with either the 2005 or 2009 application – that the Design was a derivative work. That repeated failure to disclose the derivative nature of the work further supports a finding of fraud.

### 3. LAP Can't Establish Liability Under The Prevailing Standard Governing Thin Copyrights

As noted, a copyright plaintiff must typically establish that it owns the copyrighted work in dispute and that the defendant's work is substantially similar to the original elements of the plaintiff's creation. The Ninth Circuit applies a two-part test in facilitating that determination: the extrinsic and intrinsic tests. *See Express, LLC v. Fetish Group, Inc.*, 424 F.Supp.2d 1211, 1228 (C.D. Cal, 2006) (extrinsic test assesses whether two works "share a similarity of ideas and expression based on objective, external criteria"); *see also Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000) (intrinsic test inquires if "an ordinary, reasonable person would find the total concept and feel of the works to be substantially similar." But before either prong of the test can be considered, it must first be determined if, and to what extent, the plaintiff's work is entitled to protection under the copyright laws. This brings us to the "thin" copyright regime.

The concept of a "thin copyright" is rooted in the foundational limitation on the scope of the copyright laws. That is, the law only protects genuinely original

creative content. More specifically, where a work is drawn from matters within the public domain – such as facts, concepts or, as is the case here, representations of images such as flowers that cannot be protected in and of themselves – the rights attendant to that work are more limited than those arising from original works of authorship. This is because the reproduction of those ideas, facts or concepts in the public domain cannot be protected, but instead only the manner in which the author combines or complies them are subject to copyright. The Court in *Express, LLC* explained the distinction:

> "'Originality, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity.' [Citations.] '[T]he requisite level of creativity is extremely low, [citations] but 'it is not negligible.' [Citations.] 'There must be something more than a 'merely trivial' variations, something recognizably the artist's own.'
>
> \*   \*   \*
>
> The requisite originality for copyright protection can also be found in the combination of unoriginal (and therefore uncopyrightable) elements. Mere facts are not copyrightable, but the creative organization – choosing which facts to include and how to arrange them – of those facts may be. [Citations.] For example, a phone book organized alphabetically does not meet the originality requirement because this presentation of facts (the names and phone numbers) is 'practically inevitable.' [Citations.] On the other hand, the selection and organization of supposedly divinely delivered revelations (which were therefore not original to those claiming the copyright protection) was held to have enough originality to merit copyright protection. [Citations.] Walking the line between combinations of unprotectable elements that can and cannot be afforded protection is a difficult task. In its most succinct statement of the law in this area, the Ninth Circuit stated that a 'combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." *Express, LLC, supra*, 424 F.Supp.2d at 1225. [7]

---

[7] The *Express* Court found that a registered fabric design was a protected thin copyright.

The concept was further explained the concept in *Lucky Break Wishbone Corp. v. Sears, Roebuck and Co.*, 528 F.Supp.2d 1106, 1123-1124 (W.D. Wash. 2007), where the owner of a copyright covering the depiction of a turkey wishbone sued for alleged infringement of the work:

> "Realistic depictions of live animals can be protected by copyright. [Citations.] However, the 'scope of copyright protection in such works is narrow.' [Citations.] To the extent the artistic choices are not governed by the animal's physiology or by the medium of art, they are original elements that receive 'thin copyright' protection.' Put another way, a thin copyright 'compris[es] nothing more than [the artist's] original contribution to ideas already in the public domain.' In [*Santava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003)], the Ninth Circuit held that the artist 'may not prevent others from copying aspects of his sculptures resulting from either jelly-fish physiology [the case involved alleged infringement of a glass sculpture of jellyfish] or from their depiction in the glass-in-glass medium.' [Citations.]"

The Court then noted that, when addressing a thin copyright, "[v]irtually identical," not "substantially similar," is the standard for determining whether a thin copyright has been copied, and thus infringed. *Id.; see also Ets-Hokin v. Sky Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003) ("When we apply the limiting doctrine, subtracting the unoriginal elements, *Ets-Hokins* is left with only a 'thin' copyright, which protects against only virtually identical copying').

Kandy Kiss intends to demonstrate that: (1) LAP's Design is drawn entirely from the public domain and thus qualifies only for "thin" protection; and (2) the patterns sold and disseminated by Kandy Kiss are not virtually identical to the Design. This will include testimony establishing that the elements of the Design – primarily a generic border component in lower portion of the pattern, and a varying paisley floral arrangement comprising the majority of the upper segment – are elements firmly within the public domain. And while the compilation of those elements may be protectable under the law, the resulting work is no more than a

thin copyright. From there, Kandy Kiss will elicit evidence and otherwise demonstrate the defendants' complained of designs are not "virtually identical" to LAP's work, and thus do not infringe on LAP's intellectual property rights.

### C. LAP's Available Recovery, If Any, Is *De Minimus*

#### 1. LAP Is Not Entitled To Statutory Damages Or Attorneys Fees

For the reasons explained above, Kandy Kiss intends to assert and prove that LAP is entitled to no recovery in this matter. But even assuming *arguendo* somehow establishes liability, the company's available remedies are minimal.

To start, LAP is prohibited from claiming or receiving statutory damages or attorneys fees. The *Copyright Act*, 17 U.S.C.§ 101 *et seq.*, generally entitles a prevailing plaintiff in an action for infringement to opt to recover statutory damages under 17 U.S.C.§ 504 and attorney's fees under 17 U.S.C. § 505. These remedies, however, are available only if the copyrighted work has been registered before the date the action is filed, "or the earlier of 3 months after the first publication of the work or 1 month after the copyright owner has learned of the infringement. . ." 17 U.S.C. § 412.

Kandy Kiss intends to show that because the only valid registration of Plaintiff's Design was issued on March 24, 2009, four years after the stated publication date of the Design and, similarly, years after the defendants' allegedly infringing conduct. Therefore, as a matter of law, LAP has no right to statutory damages or attorney's fees.

#### 2. There Was No Willful Infringement by Target

In addition, none of the Kandy Kiss related defendants could be found to have willfully infringed LAP's Design. None of those parties had knowledge of LAP's registered work when they manufactured, sold or distributed the allegedly infringing garments. These defendants will present evidence confirming that fact,

8
KANDY KISS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

and that LAP's cease and desist letter constituted their first notice of any potential problem arising out of the sale of the garments. Kandy Kiss, Target, and Hongdou are, at most, innocent infringers.

### 3. Profits Must Be Apportioned Between the Copyrighted Work and Other Factors that Attributed to the Profits

The Kandy Kiss defendants will seek apportionment of profits between the copyrighted work and other factors that attributed to the profits in order to reduce the amount of the damage award. Under 17 U.S.C. § 504(b), an apportionment of profits is allowed. *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004). Although the division of profits between those portions attributable to the infringement and those attributable to other sources does not require "mathematical exactness", Kandy Kiss intends to introduce evidence to show that other factors, such as the style of the top and the quality of the fabric attributed to the profits earned by the infringers. *Abend v. MCA, Inc.*, 863 F.2d 1465, 1480 (9th Cir. 1988).

### 4. Defendants Are Permitted And Intend to Deduct Taxes From Their Gross Profits

The Kandy Kiss defendants also intend to deduct taxes from their gross profit figures. This form of deduction was permitted in *In Design v. K-Mart Apparel Corp.*, 13 F.3d 559 (2d Cir. 1994). There, K-Mart was permitted to deduct the full amount of taxes even though it amounted to 42.94% of profits because it proved the amount of tax that applied to sales of infringing products. The Kandy Kiss defendants intend to present evidence of all state, federal, municipal and other taxes that were paid in connection with the infringing product in order to reduce LAP's damage award.

### 5. Defendants Intend to Introduce Evidence of Overhead

### Expenses to be Deducted From Gross Profits

Overhead may also be properly deducted from gross revenues to arrive at the alleged infringer's net profits. *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 515 (9th Cir. 1985). The Ninth Circuit has held that "[b]ecause a theoretically perfect allocation is impossible, we require only a "reasonably acceptable formula." *Id.*, 772 F.2d at 516. The infringer need not prove his overhead expenses and their relationship to the infringing product in "minute detail." *Id.* The Kandy Kiss defendants intend to calculate overhead costs using a reasonably acceptable formula and will show that the overhead actually contributed to the sales of the infringing work, thereby meeting the standards set forth by the Ninth Circuit.

### 6. Defendants Are Entitled to Deduct Overhead Expenses From The Gross Profit Even If Found to Be Willful Infringers.

Even in the unlikely event that one or more of the Kandy Kiss defendants is found to have willfully infringed LAP's work – and these defendants vehemently contend that not to be the case – a deduction of overhead expenses from the these parties' gross revenue is still allowed in this Circuit. *ZZ Top v. Chrysler Corp.*, 70 F. Supp. 2d 1167 (W.D.Wa. 1999). In *ZZ Top*, the plaintiffs argued that "preclusion of overhead costs is an accepted practice where the defendant's infringement was willful." *Id* at 1168. The district court unequivocally rejected that argument, recognizing "the Ninth Circuit has not yet adopted such a rule." *Id.*

In so holding, the court considered the *Frank Music Corp.* decision, which held that "[a] portion of an infringer's overhead properly may be deducted from gross revenues to arrive at profits, at least where the infringement was not willful, conscious, or deliberate." *Frank Music Corp., supra*, 772 F.2d at 515. The *ZZ Top* court reasoned that"[w]hile the Frank Music opinion leaves open the possibility

that overhead deductions may be precluded where the infringement is intentional, it does not mandate or even endorse such a preclusion." *ZZ Top*, 70 F. Supp. at 116. The *ZZ Top* opinion further noted that "[w]here Congress intended to punish willful infringement by authorizing different remedies depending on the infringer's culpability, it clearly knows how to do so." *Id.* The court contrasted Section 504(c) which authorized a five-fold increase in statutory damages for willful infringers with Section 504(b) which makes no distinction between willful and innocent infringers. *Id.* Thus, the deduction of overhead expenses from the gross profits should not be automatically precluded in the context of willful infringement.

## II. CLAIMS AND DEFENSES CONCERNING HONGDOU CROSS-CLAIM

Defendant Hongdou, Inc. has filed a Cross-Claim against co-defendant Paramount Textiles for Breach of Implied Warranty of Title, Implied Equitable Indemnity, and Declaratory Relief/Comparative Indemnity. Hongdou contends that it acquired fabric from Paramount bearing the textile design that LAP claims infringes on its copyrighted design. In selling that fabric, Paramount impliedly warranted under *California Commercial Code* §2312 that it maintained title and interest in the design – including the right to sell it. Although Hongdou disputes LAP' claims, to the extent it is found liable for infringement, Paramount will be in breach of the Warranty of Title. Under those circumstances, it would be compelled, under §2312, to hold Hongdou harmless for any losses incurred by way of the finding of liability.

Paramount contends that, as a matter of fact, it made no actual sale of fabric to Hongdou. But Hongdou will introduce evidence demonstrating that such a sale did transpire, this triggering the implied warranty of title and rendering Paramount responsible for any damages assessed against Hongdou.

Dated: June 22, 2009

EZRA | BRUTZKUS | GUBNER LLP

By: _____
    Mark D. Brutzkus
    Todd M. Lander
    Attorneys for Defendants
    TARGET CORPORATION,
    TARGET BRAND, KANDY KISS
    OF CALIFORNIA, INC., and
    HONGDOU, INC.