1  MARK D. BRUTZKUS, SBN 128102
   TODD M. LANDER, SBN 173031
2  EZRA|BRUTZKUS|GUBNER LLP
   21650 Oxnard Street, Suite 500
3  Woodland Hills, California  91367
   Telephone: 818-827-9000
4  Facsimile:  818-827-9099
   E-mail:      mbrutzkus@ebg-law.com
5                tlander@ebg-law.com

6
   Attorneys for Defendants
7  TARGET CORP., TARGET BRANDS, INC.,
   KANDY KISS OF CALIFORNIA, INC.
8  and HONGDOU, INC.

9
                 **UNITED STATES DISTRICT COURT**
10
                 **CENTRAL DISTRICT OF CALIFORNIA**
11

12  L.A. PRINTEX, INC., a California    )  CASE NO.: CV08-0075 ODW (PLAx))
    corporation,                        )
13                                      )  [Assigned to Hon. Otis D. Wright]
                        Plaintiff,      )
14      vs.                             )  **DEFENDANTS' TARGET CORP.,**
                                        )  **TARGET BRANDS, KANDY KISS OF**
15  TARGET CORP.; TARGET                )  **CALIFORNIA, INC. AND**
    BRANDS, INC.; KANDY KISS            )  **HONGDOU, INC'S PROPOSED**
16  OF CALIFORNIA, INC.;                )  **ALTERNATIVE JURY**
    HONGDOU, INC.; TEX-                 )  **INSTRUCTIONS**
17  ELLENT, INC.; SHAHRAM               )
    ZACHARY d/b/a PARAMOUNT             )
18  TEXTILE, INC. and DOES 1            )  Pre-Trial Conference Date: June 29, 2009
    through 10, inclusive,              )  Trial Date: July 21, 2009
19                                      )
                        Defendants.     )
20  _____ )

21
            Defendants KANDY KISS OF CALIFORNIA, INC., TARGET CORP.,
22
    TARGET BRANDS, INC., and HONGDOU, INC. (hereafter collectively referred
23
    / / /
24
    / / /
25
    / / /
26
    / / /
27
    / / /
28
                                    1

1  to as "Kandy Kiss") hereby submit the following proposed Alternative Jury

2  Instructions.

3  Dated:  June 23, 2009                        **EZRA│BRUTZKUS│GUBNER LLP**

4                                               By: _____/s/_____
                                                   Mark D. Brutzkus
5                                                  Todd M. Lander
                                                   Attorneys for Defendants TARGET
6                                                  CORP. TARGET BRANDS, INC.,
                                                   KANDY KISS OF CALIFORNIA,
7                                                  INC. and HONGDOU, INC

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Jury Instruction No___

*Copyright Infringement – Burdens – Virtually Identical*

The Court has determined in this case that the design LA Printex claims that defendants have infringed is entitled to "thin" copyright protection.  A thin copyright is one where the individual elements of the design are not the original work of the author and are not themselves entitled to copyright protection, but the compilation and organization of those elements is sufficiently original that it can be considered an original work of authorship.  The Court has ruled that while the elements of LA Printex' Design No. E50159 are not protectable, the combination and selection of those elements warrants thin copyright protection.

To establish infringement under the thin copyright standard, LA Printex must demonstrate that its Design No. E50159 and the defendants' design are "virtually identical."  If you find that the designs are not virtually identical, you must find that LA Printex has not discharged its obligation of establishing that the defendants impermissibly copied the design.

Source: *Santana v. Lowry,* 323 F.3d 805, 812 (9th Cir. 2003); *ETS-Hokin v. Skyy Spirits, Inc.,* 323 F.3d 763, 766 (9th Cir. 2003); *Express LLC v. Fetish Group, Inc.,* 424 F.Supp.2d 1211, 1227 (C.D. Cal. 2006).

_____ Given

_____ Given as Modified

_____ Refused

_____ Withdrawn

DEFENDANTS' PROPOSED ALT. JURY INSTRUCTIONS

**Plaintiff's Objection To Defendant's Proposed Instruction:**

This proposed instruction is not appropriate because it prejudicially misstates the facts in this case in a way will confuse and mislead the jury. While Defendant optimistically writes, "The Court has determined in this case that the design LA Printex claims that defendants have infringed is entitled to "thin" copyright protection" the Court has, of course, made no such determination. Nor should it, as Plaintiff's Copyright is not a "thin" copyright.

As Defendant's proposed instruction states, "A thin copyright is one where the individual elements of the design are not the original work of the author." But there is **no evidence whatsoever** that this is the case here. To the contrary, the evidence in this case will show that the individual elements of Plaintiff's copyrighted design, along with their arrangement, were an original "work made for hire" by artist Cindy Song, an employee of Plaintiff L.A Printex. Defendant has not and cannot present any evidence to the contrary. Including this instruction will be prejudicial as it could well confuse the jury into believing that Plaintiff's protected design is only entitled to limited or no copyright protection, which is not the case. Accordingly, this proposed instruction is inappropriate and should be refused.

DEFENDANTS' PROPOSED ALT. JURY INSTRUCTIONS

**Kandy Kiss' Response To Plaintiff's Objections**

The objection misunderstands the law, and the respective purview of the Court and the Jury on this question.  In applying the extrinsic test relative to substantial similarity, three factors must be assessed: (1) the copyright holder must identify the concrete elements that are similar; (2) the *Court* must determine whether the similar elements are protectable by copyright; and (3) the *Court* must define the scope of the plaintiff's copyright – i.e., whether it's entitled to broad or thin protection.  *See Express LLC v. Fetish Group, Inc.,* 424 F.Supp.2d 1211, 1228 (C.D. Cal. 2006).

Consequently, if the Court decides that the textile design at issue here is entitled only to "thin" protection, this instruction would be issued.  And if so, the instruction properly notes the Court's finding on the scope of the plaintiff's protection.  That recognition is not only appropriate, but necessary to ensure the jury does not become confused as to the appropriate standard – particularly since the Plaintiff is seeking the inclusion of other instructions that may refer to "substantial similarity," at least in a general sense.  If the Court were, in contrast, to find that the Plaintiff's copyright were entitled to broad protection – though the Kandy Kiss defendants believe the only reasonable conclusion is that the design is a thin copyright at best – then this instruction would not be issued and the question of the scope of the protection would be moot.

The Plaintiff devotes the remainder of the objection to an argument centered on what it *contends* the evidence will reflect at trial.  Of course, no evidence has been taken, rendering the argument a total irrelevance.  Beyond that, whatever probative evidence is taken will inform the Court's decision concerning the appropriate level of protection to which the plaintiff's textile design is afforded, if any.  The Kandy Kiss defendants are confident that evidence will support a finding of thin copyright.  The Plaintiff asserts otherwise.  But neither position alters the fact that this is a necessary and proper instruction.

Jury Instruction No.____

## *Actual Damages – Causation*

The plaintiff, in this case, LA Printex, is seeking to recover actual damages in this case, in the form of an amount a willing buyer would have reasonably been required to pay to a willing seller at the time of the infringement for the use made by the defendant of the plaintiff's work.

In order to recover actual damages, LA Printex must demonstrate with reasonable probability the existence of a causal connection between the infringement and the alleged loss of revenue LA Printex seeks to recover.

Source: Manual of Model Jury Instructions, Ninth Circuit, Instr. 5.1, 17.22, 17.23, 17.24 and 17.25 (2007); *Harper & Row Publishers,* 471 U.S. 539, 567 (1985); *Polar Bear Productions, Inc. v. Timex Corp*., 384 F.3d 700, 708 (9th Cir. 2004); *Los Angeles News Serv. v. Reuters Television Inter.*, 942 F.Supp. 1265, 1274 (C.D. Cal, 1996), *partially reversed on other grounds, Los Angeles News Serv. v. Reuters Television Inter.,* 149 F.3d 987 (9th Cir. 1998).

_____ Given

_____ Given as Modified

_____ Refused

_____ Withdrawn

DEFENDANTS' PROPOSED ALT. JURY INSTRUCTIONS

**Plaintiff's Objection To Defendant's Proposed Instruction:**

This proposed instruction does not add anything to the Ninth Circuit Model Instruction. Moreover, it in fact confuses and misstates the law with respect to actual damages for "lost license fee" and actual damages for "lost profits" in a significant way.

The Copyright Act, 17 U.S.C. § 504(b) allows the copyright owner to recover, among other things, the "actual damages suffered as a result of the infringement." Such actual damages can be measured as a "lost license fee" as well as a "lost profits." *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004). These measures are cumulative, and a Plaintiff can seek one or both sums. *Id*.

The Ninth Circuit considered the standards for an award of a "lost license fee" and in *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004), and a close reading of this case best shows why Defendant's proposed instruction is flawed.

"Lost profits" refers to damage to the value of the copyrighted work itself, or damage to future value, or loss of future sales. For example, in *Polar Bear*, the Plaintiff sought the following lost profits damages:

"At trial, witnesses for Polar Bear testified that the company's losses during the period of Timex's infringement totaled $200,000. Polar Bear advanced the theory that it could have sold at least 10,000 to 15,000 copies of "PaddleQuest" at a profit of between $20 to $30 per copy, but was unable to do so because it had overextended itself and lacked the financial where-withal to sell the additional videos."

The Ninth Circuit rejected this damage model, on the grounds noting, "although it is hypothetically possible that Polar Bear's business venture would

have been more successful" there was not a legally sufficient causal link between the infringement and the subsequent indirect profits. *Id*.

However, all of this is not relevant because Plaintiff does not claim this measure of damages in this case. Rather, Plaintiff only claims a "lost license fee."

In contrast to the above, a "lost license fee" is the amount that the Defendants would have had to pay the Plaintiff if they used the work lawfully. With respect to a "lost license fee" there is no "but for" causation requirement. Indeed, the law is clear Plaintiff may seek "a **hypothetical** lost license fee . . . provided the amount is not based upon undue speculation." *Id.*, citing *McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 566 (7th Cir.2003). Thus, there is no requirement that Plaintiff must show an *actual* license fee, *i.e.*, "but for" the infringement the Defendant would have made an actual license with Plaintiff and "earned" an actual license fee as proposed in Defendant's instruction. Such a requirement would be nonsensical. Indeed, *Polar Bear* specifically held that Plaintiff could be awarded a *hypothetical* license fee.

Defendant's proposed instruction misstates applicable law by requiring that Plaintiff must show an actual license both for lost license fees and indirect lost profits, which is plainly incorrect. Indeed, such a requirement is prejudicially confusing to the jury, since it is the very infringement itself that forms the basis for lost license fee to being with.

Moreover, while Defendant's instruction states "LA Printex must demonstrate with reasonable probability the existence of a causal connection between the infringement and the alleged loss of revenue LA Printex seeks to recover" it does not seek to define in any way what the causal connection should be.

Accordingly, Defendant's proposed jury instruction is not appropriate for this case and should be refused.

**Kandy Kiss' Response to the Objections**

The objection apparently takes issue with an instruction that does nothing other than state a legal truism – namely, that the Plaintiff must prove a causal connection between the defendant's conduct and the alleged damages.

The U.S. Supreme Court has found that, to recover actual damages, a copyright plaintiff must demonstrate with reasonable probability a causal link between the purported infringement and the claimed loss of revenue. *See Harper & Row Publishers,* 471 U.S. 539, 567 (1985) (the copyright holder has the initial burden of "establish[ing] *with reasonable probability* the existence of a causal connection between the infringement and a loss of revenue . "). We would assume the Plaintiff would not challenge the High Court's determination in that regard.

But the objection seems to do just that, citing *Polar Bear Productions, Inc. v. Timex Corp.* 384 F.3d 700, 708 (9th Cir. 2004), for the proposition that no "but for" causation requirement is imposed on a plaintiff seeking damages in the form of a "lost license fee." The *Polar Bear* Court made no such revision to the law of damages. To the contrary, the Ninth Circuit took pains to note the continuing presence of the causation requirement:

> "Under § 504(b), actual damages must be suffered 'as a result of the infringement,' and recoverable profits must be 'attributable to the infringement.' From the statutory language, it is apparent that a causal link between the infringement and the monetary remedy sought is a predicate to recovery of both actual damages and profits. We take this opportunity to reaffirm the principle that a plaintiff in a §504(b) action must establish this causal connection, and that this requirement is akin to the tort principles of causation and damages." *Id.*

The Plaintiff must, in other words, prove causation before it may recover actual damages. And the fact that, according to the *Polar Bear* Court, it's "not improper" for the jury "to consider" a "hypothetical" lost license fee in connection

9

with the damages component in no way shelters the Plaintiff from the causation requirement.

      This instruction is appropriate and should be given as drafted.

Jury Instruction No___

*Copyright – Publication*

In this case, LA Printex registered its Design No. E50159 with the United States Copyright Office as a "published" work.  An original work of authorship is only considered published when it is first made available to the public on an unrestricted basis.  The fact that a work may have been displayed in some capacity, or distributed with restrictions, does not mean that the work has been published unless it satisfies the definition I've just read to you.

Source: *Aerospace Services International v. LPA Group, Incorporated,* 57 F.3d 1002, 1003 (11th Cir. 1995); *Zito v. Steeplechase Films, Inc.,* 267 F.Supp.2d 1022, 1026 (N.D. Cal. 2003).

**Plaintiff's Objection To Defendant's Proposed Instruction:**

This proposed instruction is not appropriate because it is not relevant to any issue before the jury in this case, misstates the applicable law, and would prejudicially confuse and mislead the jury.

Defendant proposes this instruction a predicate for its next proposed instruction regarding "Fraud on the Copyright Office."  As discussed in the next section, however, "Fraud on the Copyright Office" is *not an issue that can be decided by the jury* and hence this instruction is irrelevant.

Moreover, the actual date of publication of Plaintiff's design has *no bearing* on any issue in this case.  Defendant claims the actual publication date was a few days after the date on Plaintiff's registration certificate.  Plaintiff disputes this, but even if true, this is immaterial.  The Copyright Act, 17 U.S.C. § 412 provides that certain statutory damages and attorney's fees are not available: (1) for an infringement of an *unpublished* work before its registration; or (2) for infringement of a *published* before registration unless registration is made with 3 month of publication.  In this case, there is no dispute that the work was published.  It is irrelevant for calculating the three month grace period (if at all applicable) whether the publication date was the one in the Certificate or a few days earlier or later.  As such, this instruction can have *no legal significance* other than to prejudice the jury against Plaintiff by implying some "misdeed" that is legally irrelevant.

This exact issue was considered in *Hearst Corp. v. Stark,* 639 F.Supp. 970, 974 (N.D. Cal. 1986), which held: "[A] publication date prior to that stated in the application for copyright registration does not necessarily invalidate the registration. Misstatements or errors in a registration application, unless by fraud, do not invalidate the copyright or render the registration certificate incapable of supporting an infringement action. [Citation.] … [E]ven if defendants' arguments were correct factually and legally, they would only impact the amount of damages which plaintiffs could be awarded."

1        Moreover, the instruction misstates the law.  The term "publication" is

2  defined in 17 U.S.C. 101, as: "the distribution of copies or phonorecords of a work

3  to the public by sale or other transfer of ownership, or by rental, lease, or lending.

4  The offering to distribute copies or phonorecords to a group of persons for

5  purposes of further distribution, public performance, or public display, constitutes

6  publication. A public performance or display of a work does not of itself constitute

7  publication."  The definition proposed by defendant does not track and indeed

8  misstates the statutory language by adding a requirement of "on an unrestricted

9  basis" nowhere found in the statute.  Insofar as "unrestricted" is not defined for the

10  jury, it confuses rather than aids them in making a determination.

11        Finally, *nothing* in the cases cited by Defendants supports such a gloss.  To

12  *Aerospace Services International v. LPA Group, Incorporated,* 57 F.3d 1002, 1003

13  (11th Cir. 1995), defined a "limited publication" – i.e., one that leaves a work

14  "unpublished for purposes of Section 412(1) - as "a publication that

15  'communicates the contents of a [work] to a definitely selected group and for a

16  limited purpose, and without the right of diffusion, reproduction, distribution or

17  sale.' [Citation omitted.]"  There is *no issue* of "limited publication" in this case

18  and as such *Aerospace Services* is inapplicable.  Similarly, the definition of

19  "publication" in *Zito v. Steeplechase Films, Inc.,* 267 F.Supp.2d 1022, 1026 (N.D.

20  Cal. 2003) *exactly* tracked the statutory text, not Defendant's gloss.  Moreover.

21  *Zito* held an infringement is not a "publication" which is also not at issue here.

22        Defendant's proposed instruction misstates applicable law, is irrelevant to

23  any issue in this case, and is prejudicial.  It should be rejected.

24

25

26

27

28

**Kandy Kiss' Response to the Objections**

The objection raises several matters that are irrelevant to the instruction and includes at least two unsupported assertions of fact.  Taking the latter issue first, the plaintiff blithely concludes that there is "no dispute that the work [in this case] was published," and that there is "*no issue* of 'limited publication'" here.  This unilateral limitation of the matters in dispute – though convenient for LA Printex – bears no resemblance to reality.  The Court may rest assured that Kandy Kiss very much contests that the design was published, and intends to elicit testimony demonstrating a lack of publication.  And to the extent *any* publication occurred, Kandy Kiss asserts that it was of a limited or restricted nature and insufficient to meet the standards delineated in 17 U.S.C. § 101.

The limited segment of the objection that is germane to instruction focuses on two arguments: (1) the instruction does not track the specific language of §101; and (2) the instruction improperly asserts that publication must be "unrestricted" to meet the prevailing legal standard under the *Copyright Act*.  Both assertions are quickly disposed of.  First, the precise language of §101 is lengthy and legalistic, and replicating it in a jury instruction serves no purpose other than to invite juror confusion.  Kandy Kiss therefore simplified the definition as a means of ensuring that the jury will understand what it is charged to decide.  Given the multiple ambiguities in the statutory language, that course of action is not only appropriate, but responsible.  Section 101, among many examples, leaves the term "public" undefined, and thus cannot possibly be interpreted by the jury with confidence.

That leads to the second assertion, namely why the proposed instruction properly notes that publication must be unrestricted in nature.  The Courts – and indeed Congress – have unambiguously determined this to the law, and it must be part of the instruction.  *See Lish v. Harper's Magazine Foundation,* 807 F.Supp. 1090, 1101-1102 (S.D. New York 1992).  In *Lish¸* the Court examined whether a professor's letter to 48 of his students constituted "publication" under the statute,

DEFENDANTS' PROPOSED ALT. JURY INSTRUCTIONS

and concluded it was not.  And in reaching that decision, the Court explored the underlying prerequisites for publication:

> "The Copyright Act defines 'publication' as 'distribution of copies . . . of a work to the public. . . .'  17 U.S.C. § 101.  Although the term 'public' is not defined in the Act, the House Report explains that 'the public' in this context refers to person 'under ***no explicit or implicit restrictions*** with respect to its contents.'  [Citations.]
>
> \*      \*      \*
>
> 'Publication' thus turns on the question whether there were 'implied restrictions' on further distribution or disclosure of the document's contents.
>
> \*      \*      \*
>
> [The] distribution of the letter to [the plaintiff's] class qualify, as [Defendant] claims, as 'public dissemination.'  Public dissemination amounts to a general release of information.  That is not what occurred here.  Distribution of the Letter was restricted both by purpose and number.'"  *Id.*

Accordingly, the instruction comports with the legal definition of "publication," and properly notes that such publication must be unrestricted.

The objection also goes on at length about the irrelevance of the accuracy of publication dates on copyright applications, and then – in a breathtaking understatement – contends that the only dispute concerning the publication date here is merely whether the "actual publication date was a few days after the date on Plaintiff's registration certificate.  LA Printex misses the point entirely, both legally and factually.

The legal question before the Court is not whether there is a minor discrepancy concerning the actual date of publication, but if LA Printex purported to register its design as a published work when, in fact, it was unpublished at the time of the application.  Kandy Kiss has already explained the troubling factual

sequence on this issue: LA Printex' March 21, 2005 registration claims a publication of March 15, 2005, while the company's recent re-registration of the design designates March 24, 2005 as the date of publication – three days *after* the initial certificate.  And that dichotomy is fundamental in nature.  The U.S. Supreme Court has noted, for example, that "[t]he fact that a work is unpublished is a critical part of its 'nature' . . . [T]he scope of fair use is narrower with respect to unpublished works." *Harper & Row Publishers, Inc. v. Nation Enterprises,* 471 U.S. 539, 564, 105 S.Ct. 2218 (1985).   Following the High Court's lead, the Northern District of California found that misstating in an application whether a work is published or unpublished vitiates any resulting registration.  *See Determined Productions, Inc. v. Koster,* 1993 WL 120463 at *1 (N.D. Cal. 1993) ("Wrongfully identifying a number of published individual works as an unpublished collection is a fundamental registration error, which deprives [the District Court] of jurisdiction" over an infringement claim based on the registration).

LA Printex' objections should be rejected on this additional basis, and the instruction issued as drafted.

_____ Given

_____ Given as Modified

_____ Refused

_____ Withdrawn

DEFENDANTS' PROPOSED ALT. JURY INSTRUCTIONS

Jury Instruction No____

*Copyright Validity – Fraud On the Copyright Office – Publication*

The defendants assert as an affirmative defense in this case that LA Printex' copyright registration is invalid.  They assert, more particularly, that the registration is invalid because LA Printex engaged in fraud on the Copyright Office.  Fraud on the Copyright Office occurs where a person who submits a copyright registration application knowingly fails to advise the Copyright Office of facts which might have occasioned the rejection of the application.

Here, the defendants assert that LA Printex committed fraud on the Copyright Office because LA Printex applied for copyright registration for Design No. E50159 as a published mark notwithstanding that the Design had not actually been published.

The defendants have the burden of proof in establishing fraud on the Copyright Office.

Source: *Urantia Foundation v. Maaherra,* 114 F.3d 955, 963 (9th Cir. 1997); *Eckes v. Card Prices Update,* 736 F.2d 859, 861 (2nd Cir. 1984).

_____ Given

_____ Given as Modified

_____  Refused

_____  Withdrawn

DEFENDANTS' PROPOSED ALT. JURY INSTRUCTIONS

**Plaintiff's Objection To Defendant's Proposed Instruction:**

This proposed instruction is completely inappropriate.  Not only would it prejudice the jury by maligning Plaintiff with unsupported and unsupportable claims of alleged "fraud," it utterly misstates applicable law.

Indeed, as defendant is certainly aware, the issue of "Fraud on The copyright Office" is not *and cannot be* a question for the jury.  As Plaintiff has previously briefed this court, the statute regarding alleged "fraud on the Copyright Office" was significantly amended effective October 10, 2008 by the PRO-IP Act, *i.e*, the *Prioritizing Resources and Organization For Intellectual Property Act of 2008*, 122 STAT. 4258, Pub. Law 110-403 (on-line *at* http://www.copyright.gov/title17). The PRO-IP Act added new subsection (b) to Section 411 of the Copyright Act as follows (emphasis added):

(b)(1) A certificate of registration satisfies the requirements of this section and section 412, regardless of whether the certificate contains any inaccurate information, unless—

(A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and

(B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.

(2) **In any case in which inaccurate information described under paragraph (1) is alleged, the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration.**

(3) Nothing in this subsection shall affect any rights, obligations, or requirements of a person related to information contained in a registration certificate, except for the institution of and remedies in infringement actions under this section and section 412.

18

DEFENDANTS' PROPOSED ALT. JURY INSTRUCTIONS

As new Section 411(b)(2) makes clear, the question of whether any "fraud on the Copyright Office" would have led to a refusal of registration **is an administrative question exclusively decided by the Copyright Office**.  It is **not** a jury question.  It is not longer even a question for the courts.  It is to be decided by the administrative agency responsible for registration – the Copyright Office.  The statutory direction is absolute.  In case of any dispute about "inaccurate information" – or its formulation as "fraud" - **the court SHALL request the Register of Copyrights** to resolve the issue.  It is utterly improper to submit any question about what the Register could or should or might do to a jury.  Indeed, how can a jury decide what the experts in the Copyright Office would or should do?  Defendants of course know this, but continue to assert this frivolous claim.

The proposed instruction not only misstates the applicable law, it is unsupported by any of the cases cited by Defendant and prejudicially misleads the jury.  The instruction states that the alleged "fraud" must be such that it "might have occasioned the rejection of the application" *but provides no statement of what those standard for rejection are.*  Instead, it merely states that Defendants *assert* "fraud" because the application alleges that the work was published when it was not.  The instruction then prejudicially implies that the mere fact this alleged inaccuracy **without any proof of intent**, **materiality or prejudice** would have been a basis for rejection when, in fact, the case law is uniform that mere error alone is **not** sufficient.  *Urantia Foundation v. Maaherra,* 114 F.3d 955, 963 (9th Cir. 1997), cited by Defendants, says: "The case law is overwhelming that inadvertent mistakes on registration certificates do not invalidate a copyright and thus do not bar infringement actions, unless the alleged infringer has relied to its detriment on the mistake, or the claimant intended to defraud the Copyright Office by making the misstatement."  Not surprisingly, Defendant omits this language entirely from its gloss on the "Fraud On The Copyright" doctrine.  Moreover, *Urantia* cited with approval *Gund, Inc. v. Swank, Inc.* 673 F.Supp. 1233, 1237

19

(S.D.N.Y.1987) and *Dynamic Solutions, Inc. v. Planning & Control, Inc.*, 646 F.Supp. 1329, 1341 (S.D.N.Y.1986) both of which held that an inadvertent error in the date of creation in the registration certificate would not invalidate a registration.  *See also Hearst Corp. v. Stark,* 639 F.Supp. 970, 974 (N.D. Cal. 1986).

Furthermore, it should be noted that, prior to the PRO-IP Act, the Ninth Circuit test required a showing of three facts: (i) a knowledge element – intent to defraud the Copyright Office; (ii) a materiality element – the errors would have led to rejection by the Register; and (iii) a prejudice element – the defendant was prejudiced by the omission. *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 486 (9th Cir. 2000); *Harris v. Emus Records*, 734 F.2d 1329, 1335 (9th Cir. 1984). Obviously, the proposed instruction mentions none of these factors because there is no factual basis for them.

This proposed instruction is not only facially improper but also highly prejudicial.  It should be refused

DEFENDANTS' PROPOSED ALT. JURY INSTRUCTIONS

**Kandy Kiss' Response To The Objections**

The lynchpin of the objection is that certain recent revisions to the language of 17 U.S.C. §411(b) eviscerated the fraud on the copyright office defense, and somehow left Kandy Kiss powerless to make this claim to the jury.   This Kierkegaardian leap is unsupported by the text of the statute, and it otherwise defies logic and common sense.

As an initial matter, nothing is §411(b) stands for the proposition that a copyright defendant is now precluded from mounting a fraud based defense to an infringement claim.   Sub-section (b)(2) does note that where inaccurate information in an application – under sub-section (b)(1) – is alleged, the Court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Registrar to refuse registration.  But the implications of that passage are nowhere as profound as LA Printex would have the Court believe.  In fact, the Historical and Statutory Notes make clear that this provision is intended to address a unique circumstance presented by the live transmission of works that are concurrently being fixed for the first time in tangible form:

> "Section 411(b) [sub-sec. (b) of this section] is intended to deal with the special situation presented by works that are being transmitted 'live' at the same time they are being fixed in tangible form for the first time.  Under certain circumstances, where the infringer has been given advance notice, an injunction could be obtained to prevent the unauthorized use of the material included in the 'live' transmission."   17 U.S.C. § 411, Historical and Statutory Notes.

Accordingly, and far from revolutionizing the copyright law by eliminating a well settled defense to infringement, §411(b)(2) instead provides a specified protocol for a finite factual setting.  Beyond that, LA Printex's argument makes no sense.  If Congress had intended to eliminate fraud on the copyright office as an

available defense – as LA Printex contends – it is axiomatic that the statutory revisions would have made that intention emphatically clear.  A legal shift of that magnitude would certainly not be ushered in through some backdoor changes to a longstanding statute, without comment or notice.

The next argument in the Objection – that the instruction misstates the relevant legal standard – is similarly unavailing.  The contents of the instruction are entirely consistent with the very language that of §411(b)(1), namely that inaccurate information was included on an application with knowledge of its falsity and the information, if known, would have caused the Copyright Office to reject the application.

LA Printex complains that the instruction doesn't specify materiality or prejudice.  But both those arguments are red herrings.  The instruction specifies that, to discharge its burden, the defendants must show that the inaccuracy was sufficiently serious to cause the Registrar of Copyrights to reject an application. Materiality is plainly assumed within that obligation.  More specifically, we know – because the U.S. Supreme Court and a California District Court have told us – that misstating whether a work is published or unpublished is a *fundamental* error warranting the invalidity of a registration.  *See Harper & Row Publishers, Inc. v. Nation Enterprises,* 471 U.S. 539, 564, 105 S.Ct. 2218 (1985); *see also See Determined Productions, Inc. v. Koster,* 1993 WL 120463 at *1 (N.D. Cal. 1993). And finally, prejudice is assumed if the inaccuracy is material and, if known, would have occasioned the rejection of the application.[1]

In short, the instruction is simple, will not confuse the jury, and accurately reflects the law.  It should be given as drafted.

---

[1]     Because these matters are embodied within the instruction, the *Three Boys* decision relied upon by LA Printex does not support the objection.

DEFENDANTS' PROPOSED ALT. JURY INSTRUCTIONS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28